IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS MARIO ALMANZA, III,

    Petitioner,                         No. 2:12-cv-2808 KJN P

   vs.

MATTHEW CATE,                          ORDER AND

    Respondent.                    FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2010 conviction on charges of unlawful driving or taking of a vehicle, and an enhancement based on a prior conviction for the same offense was found true.  Petitioner was sentenced to four years in state prison.  Petitioner claims that the trial court prejudicially erred by permitting the prosecution to present evidence of a prior auto theft to prove petitioner's identity, in violation of his due process rights.  After careful review of the record, this court concludes that the petition should be denied.

II. <u>Procedural History</u>

        On November 2, 2010, petitioner was charged with evading a police officer with willful and wanton disregard for the safety of persons and property (count 1), and the unlawful

1

driving or taking of a vehicle (count 2). Count two also alleged that petitioner sustained a prior conviction for unlawful driving or taking of a vehicle. (Clerk's Transcript ("CT") at 92-93.)

On November 5, 2010, a jury acquitted petitioner of count 1, and convicted him on count 2. (CT at 154-56.) Petitioner waived his right to a jury trial on the enhancement, and the court found the enhancement was true. (Reporter's Transcript ("RT") at 260-61; 263.) Petitioner was sentenced to the upper term of four years in prison. (CT at 208, 216.)

Petitioner filed an appeal in the California Court of Appeal, First Appellate District, on February 23, 2011. (Respondent's Exhibit ("Ex.") 3.) On May 9, 2012, the Court of Appeal affirmed the conviction. (Ex. 7.)

Petitioner filed a petition for review in the California Supreme Court on June 11, 2012. (Ex. 9.) The California Supreme Court denied the petition without comment on July 18, 2012. (Ex. 10.)

Petitioner filed the instant petition on November 15, 2012. (Dkt. No. 1.) Respondent filed an answer, and petitioner filed a traverse.

III. Facts[1]

The opinion of the California Court of Appeal contains a factual summary of petitioner's offenses:

> About 12:30 p.m. on February 15, 2008, Domenic Baldacchino was advised by the Elk Grove Police Department that his 2003 red Chevrolet Silverado truck he left for recall service at Meta [sic] Chevrolet in Elk Grove had been stolen from the lot. At approximately 10:15 that night, California Highway Patrol Officer Bill Wesselman was riding in a marked patrol vehicle with his partner on Interstate 80 in Solano County when he observed the red Silverado truck, license 7G75934, traveling westbound at a speed in excess of 80 miles per hour. The officers initiated a pursuit to attempt a detention of the Silverado, with patrol vehicle lights activated. The red Silverado "cut across" lanes of traffic and

---

[1] The facts are taken from the opinion of the California Court of Appeal for the First Appellate District in People v. Almanza, No. A130867 (May 9, 2012), a copy of which was lodged by respondent as Ex. 7 on March 28, 2013.

2

"suddenly exited" the freeway on the Midway Road off ramp. The officers followed the Silverado with siren activated.

On Midway Road, the Silverado ran through stop signs, crossed over the solid double yellow line into the opposite direction of travel at least five to ten times, and exceeded 90 miles per hour. Officer Wesselman testified that as the vehicle chase continued on Midway Road he observed three occupants in the Silverado: two males in the front seat, and a female in the rear seat.

Still proceeding westbound at a speed in excess of 90 miles per hour on Midway Road between Leisure Town Road and Interstate 505, the Silverado suddenly "blacked out" as the headlights and taillights were turned off. The officers informed "dispatch" of the pursuit, but lost sight of the vehicle.

Officer David Novelli of the Vacaville Police Department heard the report that a "red Chevy pickup truck" had evaded the California Highway Patrol Officers, and assisted in the pursuit. Fifteen to thirty minutes later at 3252 Vaca Valley Road near Pleasant Valley Road, an area that "would lead" from Midway Road, Officer Novelli observed the red Silverado with a matching license plate parked in a driveway. He found keys in the ignition, but no occupants in the vehicle or nearby. Officer Wesselman arrived momentarily and confirmed that the vehicle discovered by Officer Novelli was the same one he pursued.

Heather Archibald, a resident of the house at 767 Corte Granada Lane, very near Vaca Valley Road and Pleasant Valley Road, testified that between 10:00 and 12:00 that night a female and two males, one of whom she identified as [petitioner], came to her front door and offered her $100 for a ride to Dixon. Archibald declined the offer and shut her door.

Michelle Wohler, a driver for Yellow Cab of Vacaville, was dispatched to meet passengers "in the court" at 767 Corte Granada Lane some time after 9:00 that night. On the way there, she encountered numerous police officers and a helicopter flying above. She spoke with a Vacaville Police Officer Andy Moriarty, then proceeded to the house. Officer Moriarty then "blacked out" his patrol vehicle and waited for her to return. Wohler waited at the house briefly, whereupon two males and a female, "all Mexican," came out of a back yard and knocked on the passenger side of her cab. After they got into the back seat, Wohler began to drive her cab away.

Officer Moriarty, who was waiting for the "taxi to exit the court," detained the cab and immediately arrested the three occupants as suspects in the pursuit of the Silverado. [Petitioner] mentioned that he was from Elk Grove. He stated that the "female he was with" told him "about a party in the area of Vacaville." [Petitioner]

3

volunteered that he had been "dropped off by his cousin," who was driving a black Ford Expedition and was waiting for him at a Wal-Mart in Dixon.

During a subsequent interview at the California Highway Patrol office, [petitioner] stated that earlier in the evening his uncle picked him up at his house in the Sacramento area in a "Ford SUV," to go "to a party." They left [petitioner's] house, but "didn't make it to the party." [Petitioner] then invoked his Miranda rights and refused to make any further statements.

The prosecution also presented evidence of a prior uncharged vehicle theft and police pursuit. The sales manager for the Lasher Elk Grove Acura dealership testified that a new Acura MDX arrived at the dealership on January 29, 2008. The car was "inventoried" and placed, unlocked, in the service department lot for inspection and detailing the next day. The keys to the ignition were placed on an unsecured keyboard at the dealership. The sales manager did not report the vehicle stolen, but a few days later he received information that the Acura MDX had been recovered by the police.

About 11:45 p.m. on February 1, 2008, Police Officer Daniel Gill of the West Sacramento Police Department was in a marked patrol vehicle in the parking lot of an apartment complex on Lighthouse Drive when he noticed a new Acura MDX with "Lasher Acura paper plates," but not the typical "temporary DMV registration," on the front windshield. As Officer Gill made a U-turn he observed the Acura leave the parking lot and proceed eastbound on Lighthouse Drive. As the officer engaged his overhead lights the Acura accelerated to 65 miles per hour over the I Street Bridge, then straddled the double yellow line on the roadway and ran red lights. After the officer activated his siren, the driver of the Acura entered Interstate 5, accelerated to 90 miles per hour, turned off his lights, and nearly collided with a truck. When the Acura turned eastbound onto Interstate 80, with heavier traffic, Officer Gill "decided to cancel the pursuit." He advised dispatch and a Sacramento Police helicopter of his location. The Acura took the Northgate Boulevard exit as it pulled away from the officer, and the lights were turned back on.

Officer Daniel Paiz of the Sacramento Police Department learned of the pursuit and observed the police helicopter overhead. He saw the Acura stop at an apartment complex at 801 San Juan Avenue. The driver left the vehicle and fled into the apartments. Officer Paiz followed, and came upon muddy footprints leading to the patio area of one of the apartments, where the driver "was last seen." The patio door was recently opened and "stuff was moved to the back of the patio." The apartment was subsequently searched and [petitioner] was discovered hiding in a bedroom closet.

4

> Officer Gill then arrived at the apartment complex. He identified the Acura parked on San Juan Avenue as the vehicle he pursued, and [petitioner] as the driver of the vehicle. The keys had been left in the ignition of the Acura. A "glass smoking pipe typically used to smoke methamphetamine" was found inside the Acura, as were "shaved car keys" and "additional car keys that looked like they might have been from a dealership."

(People v. Almanza, slip op. at 1-4.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003). Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362, 413 (2000). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision, "and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Johnson, 133 S. Ct. at 1097.

////

    Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal court conducts an independent review of the record. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

## V. Due Process Claim

    Petitioner claims that the trial court prejudicially erred by permitting the prosecution to present evidence of a prior uncharged auto theft to prove petitioner's identity. Petitioner contends that the jury concluded that petitioner acted in conformity with character evidence, "which rendered his state trial fundamentally unfair in violation of his due process rights under the Fourteenth Amendment." (Dkt. No. 1 at 15.)

    The last reasoned rejection of this claim is the decision of the California Court of Appeal for the First Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner] argues that the trial court erred by admitting evidence of the prior "Sacramento incident" to prove his identity of the charged offense. He claims the uncharged offense was not sufficiently similar to the charged violation of Vehicle Code section 10851 to qualify for admission under subdivision (b) of Evidence Code section 1101, and was more prejudicial than probative.FN2
>
> > FN2. All further statutory references are to the Evidence Code unless otherwise indicated.

////

Under section 1101, subdivision (b), evidence of other crimes is admissible if it tends logically, naturally, and by reasonable inference to establish any fact material to the prosecution other than general criminal disposition or to overcome any matter sought to be proved by the defense.FN3 (People v. Ewoldt (1994) 7 Cal.4th 380, 393; People v. Hamilton (1985) 41 Cal.3d 408, 425.) "Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition; but evidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes. (Evid.Code, § 1101.) Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." (People v. Kipp (1998) 18 Cal.4th 349, 369.)

> FN3. Section 1101 provides in pertinent part: "(a) ... [E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

"If evidence of prior conduct is sufficiently similar to the charged crimes to be relevant to prove the defendant's intent, common plan, or identity, the trial court then must consider whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid.Code, § 352.)' [Citation.] 'Rulings made under [sections 1101 and 352] are reviewed for an abuse of discretion. [Citation.]' [Citation.] 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citation.]" (People v. Foster (2010) 50 Cal.4th 1301, 1328-1329.)

////

////

A. The Similarity of the Uncharged Offense.

We first consider [petitioner's] complaint that the prior uncharged vehicle theft is not sufficiently similar to prove his identity of the charged crime. "When evidence is offered under Evidence Code section 1101, subdivision (b), the degree of similarity required for cross-admissibility ranges along a continuum, depending on the purpose for which the evidence is received." (People v. Scott (2011) 52 Cal.4th 452, 470.) "When the prosecution seeks to prove the defendant's identity as the perpetrator of the charged offense with evidence he had committed uncharged offenses, the admissibility of evidence of the uncharged offenses turns on proof that the charged and uncharged offenses share sufficient distinctive common features to raise an inference of identity." (People v. Lindberg (2008) 45 Cal.4th 1, 23.) "'The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity. . . . [T]he uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] "The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature."' [Citation.]" (People v. Vines (2011) 51 Cal.4th 830, 856.) "'"The highly unusual and distinctive nature of both the charged and [uncharged] offenses virtually eliminates the possibility that anyone other than the defendant committed the charged offense." [Citation.]' [Citation.]" (People v. Hovarter (2008) 44 Cal.4th 983, 1003.) However, "The inference of identity need not depend on one or more unique or nearly unique common features; features of substantial but lesser distinctiveness may yield a distinctive combination when considered together." (People v. Scott, supra, at p. 473.)

The similar characteristics of the two offenses are many. First, the uniqueness of the two vehicle thefts is quite apparent. Both thefts occurred at dealership lots in the Elk Grove area, only two weeks apart. After the thefts, the vehicles were observed by police officers and detentions were attempted. The drivers of both of the vehicles, one of them positively identified as [petitioner], refused to comply with efforts to effectuate voluntary stops, and initiated high-speed chases. On both occasions the drivers of the vehicles fled at highly excessive speeds and drove through red lights during the pursuits. A glaringly distinctive and uncommon factor is that at the conclusion of the pursuits the drivers turned the vehicle lights out to avoid detection, then left the vehicles and escaped on foot. The cars were both abandoned with the keys left in the ignitions. We realize that three participants engaged in the charged offense, while [petitioner] apparently acted alone to commit the prior vehicle theft. Despite this single, perhaps fortuitous dissimilar feature of the two crimes, the meaningful common factors, when considered in the aggregate, lead to the inference that [petitioner] committed both offenses. ( People v. Hovarter, supra, 44 Cal.4th

9

983, 1004; People v. Gray (2005) 37 Cal.4th 168, 203; People v. Medina (1995) 11 Cal.4th 694, 748.)

B. Consideration of the Probative Value and Prejudicial Impact of the Uncharged Theft.

We turn the focus of our inquiry to whether the uncharged misconduct evidence still was subject to exclusion under section 352, as [petitioner] claims. "The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect. [Citations.] When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant. [Citation.] Because this type of evidence can be so damaging, '[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded.' [Citation.]" (People v. Daniels (1991) 52 Cal.3d 815, 856; see also People v. Hawkins (1995) 10 Cal.4th 920, 951; People v. Johnson (1991) 233 Cal.App.3d 425, 443.)

Looking first at the probative value of the evidence, as with other forms of circumstantial evidence, admissibility of testimony recounting prior uncharged criminal acts depends upon "'the materiality of the fact sought to be proved or disproved'" and "'the tendency of the uncharged crime to prove or disprove the material fact. . . .'" (People v. Robbins (1988) 45 Cal.3d 867, 879, quoting People v. Thompson (1980) 27 Cal.3d 303, 315.) To be admissible, an uncharged offense must tend logically, naturally and by reasonable inference to establish any fact material to the People's case, or to overcome any matter sought to be proved by the defense. (Robbins, supra, at p. 879.) "In order to satisfy the requirement of materiality, the fact sought to be proved may be either an ultimate fact in the proceeding or an intermediate fact 'from which such ultimate fact[ ] may be presumed or inferred.' [Citation.]" (People v. Thompson, supra, at p. 315, fns. deleted; see also Blackburn v. Superior Court (1993) 21 Cal.App.4th 414, 430.) As we have observed, the strikingly similar prior vehicle theft from the lot at the Elk Grove Acura dealership forcefully tends to prove the essential element of identity: that [petitioner] was one of the three people who participated in the driving or taking of the Silverado from the Meta [sic] Chevrolet dealership in Elk Grove only two weeks later.

Against the appreciable probative value of the evidence we balance its prejudicial effect on the defense. "In general, 'the probative value of the evidence must be balanced against four factors:  (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in

10

introducing and refuting the evidence of uncharged offenses.' [Citation.]" (People v. Daniels (2009) 176 Cal.App.4th 304, 316.)

The evidence of [petitioner's] commission of a recent vehicle taking offense was of course damaging to his defense that he did not participate in the taking or driving of the Silverado, but was not prejudicial in the sense contemplated by section 352. "'In applying section 352, "prejudicial" is not synonymous with "damaging."' [Citations.]" (People v. Callahan (1999) 74 Cal.App.4th 356, 371.) "'Undue prejudice' refers not to evidence that proves guilt, but to evidence that prompts an emotional reaction against the defendant and tends to cause the trier of fact to decide the case on an improper basis: 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is 'prejudicial.'"' [Citations.]" (People v. Walker (2006) 139 Cal.App.4th 782, 806; see also People v. Garceau (1993) 6 Cal.4th 140, 178; People v. Killebrew (2002) 103 Cal.App.4th 644, 650-651.) Here, the highly probative prior offense evidence did not carry with it the undue prejudice section 352 seeks to avoid. "A trial court should not exclude highly probative evidence unless the undue prejudice is unusually great." (People v. Walker, supra, at p. 806.) The risks inherent in the jury's consideration of the uncharged vehicle theft did not preclude the admission of the evidence. (People v. Foster, supra, 50 Cal.4th 1301, 1331.)

The uncharged offense evidence was also no more, or less, inflammatory than the charged violation of Vehicle Code section 10851, subdivision (a), the two offenses being essentially identical. The evidence carried no potential for confusion of the jury. An instruction was given to the jury to consider the prior vehicle theft for the limited purpose of proving identity, intent and knowledge. We must presume the jury followed the court's admonition, and did not draw any other improper inferences from the evidence. (People v. Scheer (1998) 68 Cal.App.4th 1009, 1023.) The source of the evidence was also unrelated to the charged offenses, the two offenses were committed within an extremely brief time span, and the prior misconduct resulted in a criminal conviction, all factors that favor admission of the evidence. (People v. Hollie (2010) 180 Cal.App.4th 1262, 1274; People v. Zepeda (2001) 87 Cal.App.4th 1183, 1211.) We find no abuse of discretion in the trial court's decision to admit the uncharged offense evidence. (People v. Lewis (2009) 46 Cal.4th 1255, 1288; People v. Prince (2007) 40 Cal.4th 1179, 1271-1272; People v. Roldan (2005) 35 Cal.4th 646, 707; Hollie, supra, at pp. 1276-1277.)

(People v. Almanza, slip op. at 4-9.)

1          The question whether evidence of petitioner's prior uncharged acts was properly
2  admitted under California law is not cognizable in this federal habeas corpus proceeding.
3  Estelle, 502 U.S. at 67.  The only question before this court is whether the trial court committed
4  an error that rendered the trial so arbitrary and fundamentally unfair that it violated federal due
5  process.  Id.; see also Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for
6  us, always, is whether the state proceedings satisfied due process; the presence or absence of a
7  state law violation is largely beside the point").  The United States Supreme Court "has never
8  expressly held that it violates due process to admit other crimes evidence for the purpose of
9  showing conduct in conformity therewith, or that it violates due process to admit other crimes
10 evidence for other purposes without an instruction limiting the jury's consideration of the
11 evidence to such purposes."  Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled
12 on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003).  In fact, the Supreme Court has
13 expressly left open this question.  See Estelle, 502 U.S. at 75 n.5 ("Because we need not reach
14 the issue, we express no opinion on whether a state law would violate the Due Process Clause if
15 it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").
16 See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not
17 acted objectively unreasonably in determining that the propensity evidence introduced against the
18 defendant did not violate his right to due process); Alberni v. McDaniel, 458 F.3d 860, 863-67
19 (9th Cir. 2006), cert. denied, 549 U.S. 1287 (2007) (denying the petitioner's claim that the
20 introduction of propensity evidence violated his due process rights under the Fourteenth
21 Amendment because "the right [petitioner] asserts has not been clearly established by the
22 Supreme Court, as required by AEDPA"); United States v. LeMay, 260 F.3d 1018 (9th Cir.
23 2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child
24 molestation cases, under which the test for balancing probative value and prejudicial effect
25 remains applicable, does not violate the due process clause).  Accordingly, the state court's
26 rejection of petitioner's claim that the trial court violated his right to due process when it

admitted evidence of his prior uncharged acts is not contrary to United States Supreme Court precedent,[2] and may not be set aside. 28 U.S.C. § 2254(d).

Petitioner has not demonstrated that the decision of the California Court of Appeal was objectively unreasonable. Under Ninth Circuit law, the admission of "other acts" evidence violates due process only if there were no permissible inferences the factfinder could have drawn from the evidence. See McKinney v. Rees, 993 F.2d 1378, 1381 (9th Cir. 1993) (question is "whether any inferences relevant to a fact of consequence may be drawn from each piece of the evidence, or whether they lead only to impermissible inferences about the defendant's character"); Jammal, 926 F.2d at 920 ("[e]vidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions"). See also LeMay, 260 F.3d at 1027 (evidence of prior similar crimes "will only sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have").

Here, the trial court held a hearing on the prosecutor's motion in limine to admit evidence of petitioner's prior uncharged acts and concluded that the February 2, 2008 evidence arrest was relevant to prove both identity and intent. (RT 23-25.) Although petitioner was not identified as the driver in the prior act, the court found that the proximity in time, the blacking out of the lights, the running of the intersections, either stop signs or red lights or both, the high rates of speed, the facts that the cars were stolen from Elk Grove dealerships, involved conduct similar enough to be probative on the issue of petitioner's intent and identity.[3] The trial court

---

[2] Petitioner claims that the admission of the uncharged conduct violated "federal law," citing Rule 404(a) of the Federal Rules of Evidence. (Dkt. No. 1 at 16.) As argued by respondent, this claim is unavailing because petitioner was tried in state court, and the Federal Rules of Evidence apply only to trials in federal court.

[3] See People v. Ewoldt, 7 Cal.4th 380, 393 (Cal. 1994) ("In the present case, evidence of defendant's prior misconduct is relevant to prove a material fact other than defendant's criminal disposition, because the similarity between the circumstances of the prior acts and the charged offenses supports the inference that defendant committed the charged offenses pursuant to the same design or plan defendant used to commit the uncharged misconduct").

13

found that the probative value of the prior uncharged conduct was great, and outweighed any prejudicial effect, particularly in light of the admonitions the court planned to provide the jury. (RT 24-25.)  Due to these similarities, and their probative value on the issues of identity and intent, the trial court's conclusion was not objectively unreasonable.  See Williams v. Stewart, 441 F.3d 1030, 1040 (9th Cir.) (admission of evidence of uncharged burglary not unduly prejudicial and did not implicate due process; evidence properly admissible to show identity and intent in trial for another burglary where the crimes were similar), cert. denied, 549 U.S. 1002 (2006).

Further, the jury instructions did not compel the jury to draw an inference of propensity.  The jury was specifically informed that certain evidence was admitted for a limited purpose, and that the jury could consider such evidence "only for that purpose and for no other." (CT 127.)  The court issued the following specific jury instruction:

> The People presented evidence of other offenses by the defendant that were not charged in this case, specifically that the defendant drove a stolen car on February 2, 2008, and evaded one or more pursuing peace officers.
>
> You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses or acts.  Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.
>
> If the People have not met this burden, you must disregard this evidence entirely.
>
> If you decide that the defendant committed the uncharged offenses or acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:
>
> 1. The defendant was the person who committed the offenses alleged in this case; or
>
> 2. The defendant acted with the intent to evade one or more pursuing peace officer(s) on February 15, 2008 and/or with the intent to deprive the owner of the vehicle being driven of possession or ownership of the vehicle for any period of time; or

>    3. The defendant knew that one or more peace officers were pursing him on February 15, 2008, that he was acting with wilful or wanton disregard for safety, or that the vehicle being driven was being driven without the owner's consent.
>
>    In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses or acts and the charged offenses.
>
>    Do not consider this evidence for any other purpose.
>
>    Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.
>
>    If you conclude that the defendant committed the uncharged offenses or acts, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged offenses or any lesser offense. The People must still prove each charge or any lesser offense beyond a reasonable doubt.

(CT 133-34.) In addition, the jury instructions as a whole correctly informed petitioner's jury that the prosecution had the burden of proving petitioner guilty beyond a reasonable doubt. (CT 117.) The jury is presumed to have followed these instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000); Brown v. Ornoski, 503 F.3d 1006, 1018 (9th Cir. 2007).

Under these circumstances, any error in admitting evidence of the February 2, 2008 uncharged acts did not have "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). See also Penry v. Johnson, 532 U.S. 782, 793-96 (2001).

Petitioner asserts that the introduction of evidence of other uncharged acts is impermissible under McKinney, 993 F.2d at 1384-1386, and Michelson v. United States, 335 U.S. 469, 475-76 (1948).[4] However, these cases are inapposite. Michelson states the general rule, since codified in the Federal Rules of Evidence (Rule 404), that evidence of prior acts is not

---

[4] But see Walters v. Maass, 45 F.3d 1355, 1357-58 (9th Cir. 1995) (holding that admission of prior bad acts evidence did not render petitioner's trial fundamentally unfair where evidence was relevant to show intent and limiting instruction was given).

15

permissible if used to demonstrate mere propensity. Michelson, 335 U.S. at 475-76. Similarly, McKinney holds that "the use of 'other acts' evidence as character evidence is not only impermissible under the theory of evidence codified in the California rules of evidence . . . and the Federal Rules of Evidence . . . but is contrary to firmly established principles of Anglo-American jurisprudence." McKinney, 993 F.2d at 1380. These cases do not address a case such as this, where the evidence was admitted for some other legitimate purpose (to establish intent and identity). Moreover, both Michelson and McKinney were decided prior to AEDPA, and thus were not subject to the limited review standards set forth in 28 U.S.C. § 2254(d). AEDPA "restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been 'adjudicated on the merits in State court.'" Johnson v. Williams, 133 S. Ct. 1091. Under AEDPA, "clearly established" federal law is that determined by the United States Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).

Moreover, it is a "widely recognized principle that similar but disconnected acts may be shown to establish intent, design, and system." Lisenba v. California, 314 U.S. 219 (1941). Both the California and Federal Rules of Evidence explicitly permit the introduction of such evidence to prove intent and identity. Cal. Evid. Code § 1101(b); Fed. Rules Evidence 404(b). Additionally, the alleged error here does not rise to the level of a constitutional violation. The uncharged acts evidence was probative on issues related to both petitioner's identity and his intent. This probative value was not substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury, as the evidence was no more inflammatory than the offenses with which petitioner was charged.

In sum, the admission of the February 2, 2008 uncharged acts at petitioner's trial did not violate any right clearly established by United States Supreme Court precedent, and was not an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to relief.

VI. Conclusion

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

IT IS RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 18, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

alma2808.157